United States District Court
Southern District of Texas
**ENTERED**
February 16, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In Re Fieldwood Energy III LLC, *et al.*, | § § § § | |
| *Post-Effective Date Debtors.* | § § § § | Case No. 4:22-cv-00855 |
| _____ | § § | |
| QuarterNorth Energy LLC, | § § | |
| *Plaintiff-Appellee,* | § § | Adv. Proc. No. 20-03476 |
| v. | § § | |
| Atlantic Maritime Services LLC, | § § | |
| *Defendant-Appellant.* | § § § | |

## <u>MEMORANDUM AND RECOMMENDATION</u>

Before the Court is the Motion for Certification of Direct Appeal filed by Defendant-Appellant Atlantic Maritime Services LLC ("Atlantic"). Dkt. 2. Plaintiff-Appellee QuarterNorth Energy LLC ("QuarterNorth") responded (Dkt. 11), and Atlantic filed a reply in support of the motion (Dkt. 12). The motion was referred to the undersigned judge and is ripe for consideration. Dkt. 13. After carefully considering the parties' briefing, the record, and the governing law, it is recommended that Atlantic's motion be granted.

## Background

The procedural background of this dispute was thoroughly summarized by the bankruptcy court's two memorandum opinions.  *See* Dkts. 2-1 and 2-2 (attaching the February 23, 2022 and October 15, 2021 opinions as Exhibits A and B).[1]  As the procedural history is not in dispute, the Court incorporates that recitation and summarizes the relevant proceedings herein.

This appeal arises out of Fieldwood Energy III LLC's ("Fieldwood") Chapter 11 bankruptcy proceeding.  Before filing for bankruptcy, Fieldwood was one of the largest producers of oil and gas in the Gulf of Mexico.  Dkt. 2-2 at 1.  It contracted for Atlantic to provide drilling services on five leases throughout 2020.  *Id.*  At issue in the underlying dispute are Atlantic's claims for $5,824,744.58 and $7,11,706.55 of unpaid fees for goods, equipment, supplies and services to two of those leases where Fieldwood held interests with co-working interest owners Ecopetrol America, LLC ("Ecopetrol"), Ridgewood Katmai, LLC ("Ridgewood"), and ILX Prospect Katmai, LLC ("Prospect") (together, with Ecopetrol and Ridgewood, the Co-Working Interest Owners).  *Id.* at 2.  Atlantic filed statements of privileges under the Louisiana

---

[1] Though referenced herein as Dkt. 2-1 and 2-2, the bankruptcy court's orders were docketed in the adversary proceeding, Case No. 20-03476 in the U.S. Bankruptcy Court for the Southern District of Texas, as entries 86 and 153, respectively.

Oil Well Lien Act ("LOWLA") to preserve and perfect its liens on the leases on which Atlantic performed unpaid work. *Id.*

In August 2020, Fieldwood filed in the Southern District of Texas a voluntary petition for bankruptcy under Chapter 11. Two months later, Atlantic filed two suits in the Eastern District of Louisiana to enforce its privileges under LOWLA against the non-Fieldwood Co-Working Interest Owners, seeking a sequestration of their property interests in the leases. *Id.* In response, Fieldwood commenced the underlying adversary proceeding to enjoin Atlantic's lawsuits. Adv. Proc. Dkt. 1 (adversary complaint), Dkt. 3 (emergency motion). The bankruptcy court granted the injunction, *id.*, Dkt. 10, which was extended by the parties' agreement until the court could reach the merits of the dispute after Fieldwood's Chapter 11 plan was confirmed.

On April 14, 2021, Fieldwood filed an Amended Adversary Complaint, asserting nine counts against Atlantic. Adv. Proc. Dkt. 24. While each count is addressed in the bankruptcy court's opinions, two remain relevant to this appeal: Count IV, which sought a declaration that Atlantic's privileges under LOWLA were "extinguished" upon satisfaction, settlement, and discharge of Atlantic's debt under the bankruptcy plan; and Count XI, which sought a permanent injunction against Atlantic preventing it from pursing its claims in the Eastern District of Louisiana lawsuits. Dkt. 2-2 at 5 (describing the nine counts alleged in Adv. Proc. Dkt. 24). The next day, on April 15, 2021,

3

Fieldwood filed a Fourth Amended Joint Chapter 11 Plan and an accompanying Disclosure Statement. Bankr. Dkts.[2] 1284, 1285. The Disclosure Statement specifically identified the adversary proceeding and the effect that plan confirmation would have thereon:

### O. Adversary Complaint Against Atlantic Maritime Services, LLC.

After two lawsuits … were filed post-petition on November 13, 2020 against certain of the Debtors' co-working interest owners in the United States District Court for the Eastern District of Louisiana, the Debtors commenced an adversary proceeding … seeking entry of an order extending the automatic stay to enjoin Atlantic Maritime Services, LLC ("Atlantic") from prosecuting the lawsuits ….

On April 14, 2021, the Debtors filed an amended adversary complaint in the Atlantic Proceeding …, seeking an extension of the automatic stay to the [Co-Working Interest Owners] for the remainder of the Chapter 11 cases and, among other relief, determinations from the Bankruptcy Court that … (iv) upon the satisfaction, settlement, and discharge of Atlantic's claims pursuant to the Plan, any Louisiana privileges held by Atlantic will be "extinguished" under LOWLA section 4864, including any Louisiana privileges that extend to the [Co-Working Interest Owners'] working interests in such leases.

Bankr. Dkt. 1285 at 46-47. On June 25, 2021, the bankruptcy court confirmed a subsequent iteration (Eighth Amended version) of Fieldwood's Chapter 11

---

[2] The bankruptcy proceeding from which the underlying adversary action arose is docketed as Case No. 20-33948 in the U.S. Bankruptcy Court for the Southern District of Texas.

plan (the "Plan").   Bankr. Dkt. 1751 (confirming Eighth Amended Joint Chapter 11 Plan, Bankr. Dkt. 1742 (filed June 25, 2021)).

In the adversary proceeding, Fieldwood was substituted out as the plaintiff after its assets were sold and its interests were assigned to QuarterNorth pursuant to the Plan.  *Id.* at 3-4; *see also* Bankr. Dkt. 2008 at 6, 17 (effective Plan at the time of the adversary final judgment); Adv. Proc. Dkt. 72 (case management order).  The bankruptcy court issued its first opinion on QuarterNorth's motion for summary judgment and Atlantic's countervailing motion to dismiss QuarterNorth's claims on October 15, 2021.  *See generally* Dkt. 2-2 (referencing Adv. Proc. Dkts. 31, 32).  The court denied both parties' motion with respect to Count IV, finding that QuarterNorth pleaded a plausible claim for relief that Atlantic's LOWLA privileges had been "extinguished," but that QuarterNorth did not establish that Fieldwood's bankruptcy satisfied Atlantic's claims with respect to the third-party Co-Working Interest Owners.  *Id.* at 23-24.  The court thus concluded that a material dispute of fact remained with respect to Count IV, and it could not issue the injunction sought in Count IX (preventing Atlantic from pursuing its alleged LOWLA rights) unless and until the threshold issue was resolved in QuarterNorth's favor.  *Id.* at 27.

Count IV proceeded to trial on November 16, 2021, after which the bankruptcy court ruled orally in favor of Atlantic.  *See* Adv. Proc. 141

5

(transcript).  But QuarterNorth moved for reconsideration, Adv. Proc. Dkt. 143, which resulted in the bankruptcy court issuing a second opinion amending its prior rulings.  Dkt. 2-1 (February 23, 2022 opinion).

In its opinion granting reconsideration, the bankruptcy court held that its oral ruling was premised on three mistaken facts: "(1) that the Disclosure Statement failed to say that the Plan would extinguish the LOWLA claims; (2) that Fieldwood had previously indicated that the Plan would not cause Atlantic to lose any rights; and (3) that the Plan sought an injunction."  *Id.* at 2.  The first purported mistake of fact lies at the heart of motion for certification of direct appeal, as the court's consideration of the Plan and Disclosure Statement, together, was crucial to its interpretation of LOWLA.

The bankruptcy court observed that LOWLA does not define "extinguish" or "extinct" such that the statute's plain language would resolve whether the Plan "extinguished" Atlantic's privileges that attached to the property.  *Id.* at 9.  Nevertheless, the court undertook an exhaustive analysis of Louisiana statutes, case law, and secondary sources to determine that LOWLA privileges were akin to "accessory obligations [that] cannot exist without the principal obligation."  *See id.* at 8-11 (analyzing Louisiana Civil Code provisions, Louisiana state court jurisprudence, Black's Law Dictionary, treatises and a law review article, among others).  It further determined that Fieldwood's debt

to Atlantic, which constituted the "principal obligation," had been discharged upon the effective date of the Plan.  *Id.* at 11.

More specifically, the bankruptcy court looked to two provisions, Sections 6.8 and 10.3, to determine that the Plan extinguished Atlantic's LOWLA liens.  Section 6.8 (Satisfaction of Claims) provided:

> Unless otherwise provided herein, any distributions and deliveries to be made on account of Allowed Claims under the Plan shall be in *complete and final satisfaction, settlement, and discharge* of an exchange for such Allowed Claims.

*Id.* at 13 (emphasis added) (quoting Bankr. Dkt. 2008 at 69).  Additionally, Section 10.3 (Discharge of Claims Against Interests of Debtors) provided:

> Upon the Effective Date, except as otherwise expressly provided in the Plan or in the Confirmation Order, the distributions, rights and treatment to be made under the Plan, shall be in *complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims, Interests, and Causes of Action of any nature whatsoever*, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtors or any of their Assets or properties, *regardless of whether any property shall have been distributed or retained* pursuant to the Plan on account of such Claims and Interests ….

*Id.* at 12 (emphasis in original) (quoting Bankr. Dkt. 2008 at 81).

According to the bankruptcy court, because Sections 6.8 and 10.3 of the Plan provided for "satisfaction" and "settlement" of Atlantic's claims *and*

because the Disclosure Statement gave these terms meaning beyond "boilerplate terms without intentionality," Atlantic's claim against Fieldwood was extinguished. *Id.* at 12-15. As a necessary corollary, the court determined that Atlantic could no longer assert its "accessory obligations" under LOWLA arising from Fieldwood's primary obligation, as such LOWLA privileges do not exist but-for the primary obligation. *Id.* Relatedly, the court concluded that the extinguishment of Atlantic's alleged claims against non-debtor Co-Working Interest Owners was not a third-party release. *Id.* at 15. And even if it were, it held that Atlantic's failure to appeal the confirmation of the Plan was fatal to Atlantic's third-party release analogy. *Id.*

On March 10, 2022, the bankruptcy court entered a final judgment in favor of QuarterNorth in the adversary proceeding. *See* Dkt. 2-3 (also docketed as Adv. Proc. Dkt. 158). The judgment declared that QuarterNorth's "prepetition obligations to [Atlantic] became extinct, thereby extinguishing any alleged privileges securing such obligations under [LOWLA], including any Privileges against properties *owned by entities other than the Debtors*." Dkt 2-3 at ¶ 1 (emphasis added). The judgment also permanently enjoined Atlantic from "pursuing its Privileges, including, without limitations, seeking to enforce its alleged *in rem* rights against" the Co-Working Interest Owners. *Id.* at ¶ 2. Atlantic seeks direct review of that judgment pursuant to 28 U.S.C. § 158(d)(2).

8

## **Legal Standard**

A district court may, "acting on its own motion or on the request of a party to the judgment, order, or decree … certify that (i) the judgment, order, or decree involves a question of law as to which there is no controlling decision of the court of appeals for the circuit or of the Supreme Court of the United States, or involves a matter of public importance; (ii) the judgment, order, or decree involves a question of law requiring resolution of conflicting decisions; or (iii) an immediate appeal from the judgment, order, or decree may materially advance the progress of the case or proceeding in which the appeal is taken ...." 28 U.S.C. § 158(d)(2)(A); *see generally In re OCA, Inc.*, 552 F.3d 413, 418 (5th Cir. 2008); *Rockies Express Pipeline LLC v. Ultra Res., Inc.*, 2020 WL 7323356, at *1 (S.D. Tex. Dec. 10, 2020); *In re Amaravathi Ltd. P'ship*, 2009 WL 2342749, at *1 (S.D. Tex. July 29, 2009).

## **Analysis**

Atlantic seeks certification of the following question for direct review by the Fifth Circuit:

> Whether the labeling of the treatment of claims against a debtor as a "satisfaction" and "settlement" of such claims under a chapter 11 plan of reorganization—regardless of whether a creditor rejects the plan and opts out of non-debtor releases under the plan, and regardless of the nature of the creditor's treatment under the plan—"extinguishes" any statutory privileges held by a creditor against non-

> debtor property that are granted under LOWLA based
> on services provided to debtor.

Dkt. 2 at 14-15.  Title 28 U.S.C. § 158(d), however, authorizes this Court to certify a "judgment, order, or decree" for immediate Fifth Circuit review.  And whereas Atlantic frames the question as a single, compound inquiry, there are at least two unsettled questions of law underlying the bankruptcy court's February 23, 2022 opinion and ensuing final judgment:

1. Can the confirmation of a bankruptcy plan that provides for "satisfaction" and "settlement" of claims against a debtor extinguish LOWLA privileges attached to property not owned exclusively by the debtor?

2. If a plan can extinguish such LOWLA privileges, can the language of a plan be read in conjunction with a disclosure statement for the purpose of releasing non-debtors?

As explained below, these questions—and perhaps others—are unsettled and have implications extending far beyond this case.[3]  Under those conditions, certification is mandatory.  *See* 28 U.S.C. § 158(d)(2)(A) (specifying that the district court "shall" certify the appeal if there is no controlling decision from the Supreme Court or relevant court of appeals or if the case involves a matter of public importance); *Hobbs v. Buffets, LLC*, 2019 WL 12497543, at *3 (W.D.

---

[3] The Fifth Circuit treats certified questions under 28 U.S.C. § 158(d)(2)(A) "'essentially as [it] treat[s] certified questions from district courts' under 28 U.S.C. § 1292(b)."  *In re Franchise Servs. of N. Am., Inc.*, 891 F.3d 198, 206 (5th Cir. 2018) (quoting *In re OCA*, 552 F.3d at 418).  As both statutes provide for the review of an order, the Fifth Circuit may "look[ ] to the entire certified order" and "is not tied to the particular question formulated by the district court.'"  *Id.* (quoting *Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 205 (1996)).

Tex. June 24, 2019) (rejecting contention that certification is discretionary if the conditions in § 158(d)(2)(A) are met).  This Court should certify the bankruptcy court's judgment and related opinion for direct appeal.

## I.    **Overview of LOWLA**

"Under LOWLA, a subcontractor may assert a lien over the property of an operator or lessee in order to secure 'the price of his contract for operations.'" *Cutting Underwater Techs. USA, Inc. v. Eni U.S. Operating Co.*, 671 F.3d 512, 518 (5th Cir. 2012) (per curiam) (footnote omitted) (quoting La. Rev. Stat. Ann. § 9:4862(A)(1)).  The Fifth Circuit concisely summarized the policy impetus behind LOWLA privileges and the attachable property:

> [T]he statutory privilege aims to protect [subcontractors] from the default of those who engage them.  As the Louisiana Supreme Court has observed, the statute reflects the policy decision that the lease owners are in a far better position to ensure payment for the subcontractor's services than is the subcontractor, and that the onus should be on the lease owners to *ensure that the contractor it hires is solvent and that it actually makes payment to the subcontractor*.  The statute c*learly place[s] the risk of the contractor's insolvency or failure to pay on those with an interest in the lease.*

*Id.* (internal quotations and citations omitted; emphasis added).

To effectuate this policy goal, LOWLA enables unpaid subcontractors to attach certain "property subject to the privilege."  La. Rev. Stat. Ann. § 9:4863. The categories of attachable property include those sought by Atlantic here,

namely "[t]he interest of the operator and participating lessee in hydrocarbons produced from the operating interest and the interest of a non-participating lessee in hydrocarbons produced from that part of his operating interest subject to the privilege" and "[t]he proceeds received by, and the obligations owed to, a lessee from the disposition of hydrocarbons subject to the privilege." *Id.* § 9:4863(A)(3), (4).

"It is well settled under the Oil Well Lien Act that the privilege created by [La. Rev. Stat. Ann.] 9:4861 attaches to all property listed in the statute, *regardless of ownership, and requires no contractual relationship between the supplier of labor, service, or equipment and the owner of the lease or equipment.*" *Guichard Drilling Co. v. Alpine Energy Servs., Inc.,* 657 So.2d 1307, 1311 (La. 1995) (emphasis added) (collecting cases from the Louisiana Supreme Court, Louisiana courts of appeal, and the Fifth Circuit).   Moreover, Section 9:4863(A)(4) extends not only "to the proceeds of the well actually drilled[,] but rather exists on *the entire lease as a whole*." *Id.* (emphasis added).

The parties' dispute implicates not only LOWLA's policy underpinnings, but also the mechanics of privilege extinguishment.   The relevant section simply provides that a privilege is extinguished "[u]pon extinction of the obligation it secures."[4]   La. Rev. Stat. Ann. § 9:4864(B)(1).   As the bankruptcy

---

[4] Other methods of extinguishment listed in § 9:4864(B) are not at issue here.

court acknowledged, the statute does not define "extinguish" or "extinction," or otherwise address the effects of bankruptcy.  *See generally* Dkt. 2-1 at 9-11.

## II.    **An open question exists as to whether LOWLA privileges are extinguished when a debtor's bankruptcy plan is confirmed and made effective.**

At the heart of this appeal is the intersection of bankruptcy law and the breadth and survival of a LOWLA privilege.  As described *supra*, Part I, LOWLA's policy and, indeed, its express language may be undermined if a debtor, who is also a co-working interest holder in a lease, can extinguish an *in rem* privilege that otherwise attaches to property on and proceeds from the *entire* lease.  *See* La. Rev. Stat. Ann. § 9:4863.  That is, holding that the confirmation of a contractor's bankruptcy plan can extinguish a subcontractor's LOWLA privilege as it pertains to property owned by *other* co-working interest owners appears contrary to the LOWLA's purpose.  *Cutting Underwater Techs.*, 671 F.3d at 518 (quoting *Guichard*, 657 So.2d at 1312-13 for the principle that LOWLA "clearly place[s] the risk of the contractor's insolvency or failure to pay on those with an interest in the lease"); *Guichard*, 657 So.2d at 1311 (LOWLA privilege attaches to "all property listed in the statute, regardless of ownership" and without requiring a separate contract).

In practical terms, if one co-working interest owner's bankruptcy could release the other working interest owners from LOWLA privileges, then the subcontractor would still be left with the full risk of its contractual counter-

13

party's insolvency.  This Court has not identified any precedent from the Fifth Circuit or Supreme Court of the United States that controls the necessary resolution of this apparent tension.

### A.     The bankruptcy court's statutory analysis.

The bankruptcy court addressed several statutory-interpretation questions to resolve the dispute.  In the absence of binding precedent, however, that court relied on myriad non-controlling authorities to do so.

First, the bankruptcy court interpreted a LOWLA privilege as a lien akin to an "accessory" contract or obligation. Dkt. 2-1 at 8.  It noted that "Louisiana law recognizes a difference between principal and accessory contracts," as well as "principal and accessory obligations."  *Id.* (examining Louisiana Civil Code and Louisiana Supreme Court precedent on mortgages).  "An accessory obligation provides security for a separate obligation while the obligation guaranteed by that security is the principal obligation."  *Id.* (citing *Fairfield Dev. Co. v. Jackson*, 438 So.2d 664, 667 (La. Ct. App. 1983)).  The court then concluded that a LOWLA privilege is an "accessory right that requires the existence of a principal obligation."  *Id.* at 8-9.

The bankruptcy court's sources are numerous, but notably absent from its substantial string cites is any apposite precedent from the Fifth Circuit (or, except for high-level principles, from the Louisiana Supreme Court).  Indeed, it acknowledges that "[a]t least one source refers to privileges as 'accessory

14

obligations,'" but that source, which is not specific to LOWLA, is a treatise: the Louisiana Law of Security Devices: A Precis § 34.4. *See id.* at 8 n.5.

Next, the bankruptcy court examined a cross-section of authority to define "extinction," as LOWLA itself is silent on the meaning of that term. *See* Dkt. 2-1 at 9-11. It referred to numerous authorities, including Black's Law Dictionary, the Louisiana Civil Code, secondary treatises, and Fifth Circuit precedent on mortgages, to determine that, "in its survey of Louisiana law [and] the parties' briefings," there was not an "unusual definition of 'extinct.'" *Id.* at 11. Thus, the bankruptcy court adopted a definition of "extinct" that meant "terminated, destroyed, or no longer in existence." *Id.*

Having determined that a LOWLA privilege is tantamount to a secondary obligation that is extinguished when the primary obligation is extinguished, the bankruptcy court ruled in favor of QuarterNorth. It found that the primary obligation was Fieldwood's unpaid service charges to Atlantic, and "Fieldwood's debt to Atlantic was discharged upon the Effective Date of Fieldwood's Plan." *Id.* at 11 (citing 11 U.S.C. § 1141(d)(1)(A)). Consequently, it concluded that Atlantic's LOWLA privileges, as accessory obligations, were extinguished. *Id.* at 11-14. The final judgment enjoining Atlantic from enforcing any LOWLA privileges against non-debtors followed. Dkt. 2-4.

### B.  The current landscape of Fifth Circuit LOWLA jurisprudence

Quite evidently, the bankruptcy court conducted a thorough review of LOWLA jurisprudence and analogous Louisiana law and authorities.  Its analysis nonetheless relied on authority that does not control for the purposes of 28 U.S.C. § 158(d)(2)(A)(i).  This Court finds that certification of direct review is appropriate to resolve whether the bankruptcy court properly determined that a LOWLA privilege is an "accessory obligation" that "extinguishes" upon the discharge of a single interest-holder's personal liability through bankruptcy.

This open question is particularly salient because Section 9:4864, entitled "When the privilege is established and when it is extinguished," does not define obligations or contracts—whether accessory or principal.  The bankruptcy court's opinion instead cites Section 9:4862(B), which provides: "The privilege created by this Part is *accessory to and secures only the following*: (1) [t]he amount of the obligation …, (2) [i]nterest due on the amount of the obligation, (3) [t]he cost of preparing and filing the statement of privilege and notice of pendency of action …, [and] (4) [t]he amount of reasonable attorney fees …."  This subpart alone is not dispositive, however.  Even though LOWLA contemplates that the privilege would be "accessory to … the *amount* of the obligation," it does not speak to the contours of the obligation itself.  The

plain language raises at least several questions in light of the bankruptcy court's ruling: (a) whether "the amount of the obligation" can be read to mean "the obligation itself,"[5] and (b) whether the termination of a single interest-holder's personal liability (obligation) functions as the "extinguishment" of *in rem* rights against all property listed in Section 9:4863.

The parties have not identified—and the Court, in its independent review, has not located—any binding authority from the Fifth Circuit or United States Supreme Court that controls this dispute.  The Fifth Circuit has undertaken in-depth statutory analyses of other LOWLA definitions that are not at issue here, *see Matter of ATP Oil & Gas Corp.*, 888 F.3d 122, 126-27 (5th Cir. 2018) (analyzing the text of LOWLA to determine whether an "overriding royalty interest" falls within the statute's safe harbor provision), and has applied LOWLA to determine creditor priority in adversary actions, *see In re Equinox Oil Co., Inc.*, 300 F.3d 614, 616-17 (5th Cir. 2002).[6]  These opinions do not address the relevant issues.

---

[5] Section 9:4861 constitutes the definition section of the privilege provisions.  While the term "obligation" is used to define other terms—*e.g.*, a "claimant" or a "participating lessee"—it is not defined in its own right.

[6] This Court has also reviewed a number of non-controlling opinions from the bankruptcy and district courts of this District which, while instructive, do not guide this exact question.  *See, e.g.*, *In re ATP Oil & Gas Corp.*, 550 B.R. 110, 118 (Bankr. S.D. Tex. 2016) (interpreting the application of LOWLA to on-shore storage services not performed at the well site); *In re ATP Oil & Gas Corp.*, 537 B.R. 789, 794-95 (Bankr. S.D. Tex. 2015) (analyzing whether a contractual agreement can extend LOWLA privileges to well sites that had been non-operational for 90 consecutive

Moreover, as Atlantic notes, the bankruptcy court's treatment of LOWLA privileges creates tension with other Fifth Circuit precedents because the judgment results, at least indirectly, in the discharge of liability of the non-debtor Co-Working Interest Owners.  Dkt. 2 at 9-10.  The bankruptcy court recognized—and QuarterNorth does not dispute—that the oil leases on which Atlantic performed work were not exclusively owned by Fieldwood such that they were wholly included as part of Fieldwood's estate.  Specifically, one co-working interest owner (Ecopetrol) owned 31.5% of the working interest in one lease, and two other co-working interest owners (Ridgewood and Prospect) owned a cumulative 50% of the working interest in the second lease.  Dkt. 2-2 at 2.  If LOWLA privileges would have attached this property pursuant to Section 9:4863 in the absence of bankruptcy proceedings, then Fieldwood's Plan effectively un-encumbered this non-debtor's property (or interests) through the bankruptcy process by discharging the "primary" obligation between Fieldwood and Atlantic.

The ultimate consequence of the bankruptcy court's judgment, then, is that LOWLA privileges may treated differently from debt that is otherwise collectible against non-debtors.  *See In re Edgeworth*, 993 F.2d 51, 53 (5th Cir. 1993) ("A discharge in bankruptcy does not extinguish the debt itself, but

---

days), *aff'd sub nom. Harvey Gulf Int'l Marine, Inc. v. Bennu Oil & Gas, LLC*, 559 B.R. 152 (S.D. Tex. 2016).

merely releases the debtor from personal liability," as "the debt still exists and can be collected from any other entity that might be liable."); 11 U.S.C. § 524(e) ("[D]ischarge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt.").

For these reasons, the Court finds that certification of the bankruptcy court's judgment is appropriate.  The Fifth Circuit has not yet addressed the impact a bankruptcy plan may have on a party's right to enforce a LOWLA privilege against non-debtors.[7]  28 U.S.C. § 158(d)(2)(A)(i).  Clarity on how LOWLA and bankruptcy law intersect is also a "matter of public importance" that may affect all operators, lessees, contractors, and subcontractors whose operations are subject to LOWLA.  *Id.*

### III.   An open question exists as to whether courts may consider the disclosure statement in conjunction with the bankruptcy plan when evaluating the specificity of a third-party release.

The bulk of the parties' briefing focuses not on the bankruptcy court's statutory interpretation, but rather on its analysis and application of language in Fieldwood's Plan and its Disclosure Statement.  Indeed, the bankruptcy court deemed the first error warranting reconsideration as its failure to account for language in the Disclosure Statement that put Atlantic "on notice"

---

[7] Only the Fifth Circuit—not this Court—could seek direct guidance from the Louisiana Supreme Court as to how LOWLA should be interpreted and applied, should that prove necessary when resolving the issues.  *See* Rule XII of the Supreme Court of Louisiana.

that its LOWLA privileges would be discharged.  Dkt 2-1 at 2, 13.  But because this issue raises a separate question from whether a debtor's discharge of personal liability extinguishes LOWLA privileges against non-debtor property, this Court addresses it separately.

### A.    The bankruptcy court's analysis of the Plan and Disclosure Statement

After determining that Atlantic's LOWLA privileges were accessories to the Fieldwood's obligation to pay Atlantic for services, the bankruptcy court turned to two sections of the Plan to determine whether Atlantic had adequate notice of the Plan's intended effect on its LOWLA privileges.   The court ultimately concluded that Plan, read together with the Disclosure Statement, discharged any obligations owed to Atlantic.

Section 6.8 of the Plan provided that the acceptance of "any distributions and deliveries … shall be in *complete and final satisfaction, settlement, and discharge* of an exchange for such Allowed Claims."  Dkt.2-1 at 13 (emphasis added).  Section 10.3 further provided that the confirmation of the Plan and the "distributions, rights and treatment to be made under the Plan, shall be in *complete satisfaction, discharge, and release*, effective as of the Effective Date." *Id.* at 12 (emphasis in original).  The bankruptcy court found that these pivotal terms—"satisfaction" and "settlement"—meant that "Fieldwood's obligation to Atlantic, instead of simply being discharged, was fulfilled and extinguished.

In sum, Fieldwood's obligation to Atlantic ceased to exist after it was satisfied." *Id.* at 14. That, in turn, meant that the accessory obligations arising out of Fieldwood's primary obligation to Atlantic were extinguished.

Importantly, the bankruptcy court made clear that it reversed itself after reviewing the language of the Disclosure Statement in conjunction with the Plan. *Id.* at 13-14.[8] So, despite the Plan's lack of specific reference to Atlantic's claim of LOWLA privileges against non-debtors, the bankruptcy court looked to the Disclosure Statement as a supplemental source of notice. Based on the Disclosure Statement's identification of the underlying adversary proceeding and Atlantic's assertion of LOWLA privileges, the bankruptcy court held that "satisfaction" and "settlement" "were not boilerplate terms without intentionality." *Id.* at 13. Instead, it held that Fieldwood "adequately disclosed" that the Plan would discharge Atlantic's LOWLA privileges. *Id.* at 13-14. Because the intended discharge was adequately disclosed, Atlantic's failure to appeal the confirmation of the Plan was, according to the bankruptcy court, fatal to any argument that the Plan exceeded the court's authority or that the discharge was akin to a release of third-party liability. *Id.* at 14-15.

---

[8] In its prior oral ruling, which is found at Dkt. 2-3, the bankruptcy court deemed these terms "colloquial" and held that it would not be a "fair reading of the Plan" to find that these common terms could have "specialized meaning" that would include Atlantic's LOWLA privileges. Tr. 8:7-14, 8:22-24.

### B.    The Fifth Circuit's specificity test for third-party releases

Based on its determination that a LOWLA privilege is an accessory obligation that cannot survive without the principal obligation, the bankruptcy court concluded that its opinion was not one that addressed non-consensual third-party releases.  *Id.* at 15.  That is, there were no remaining third-party liabilities arising out of LOWLA privileges to be released.  The bankruptcy court further concluded that, "even if the provisions could be analogized to a third-party release, it was incumbent on Atlantic to appeal."  *Id.*

Once again, this Court was unable to identify (and the parties did not provide) binding authority holding that the bankruptcy process can extinguish LOWLA privileges in a way that is distinct from the third-party release framework.  Instead, this Court has already recognized that, whether directly or indirectly, the bankruptcy court's judgment may effectively un-encumber non-debtor property that would otherwise have been subject to LOWLA privileges.  *See supra* Part II.B.  As such, existing authority on third-party releases is relevant and instructive.

The Fifth Circuit has repeatedly expressed its aversion to non-debtor releases and permanent injunctions.  *See In re Pac. Lumber Co.*, 584 F.3d 229, 252 (5th Cir. 2009) (collecting Fifth Circuit opinions that held that Section 524(e) of the bankruptcy code "only releases the debtor, not co-liable third parties"); *see also In re Vitro S.A.B. de CV*, 701 F.3d 1031, 1062 (5th Cir. 2012)

(noting that the Fifth Circuit has "firmly pronounced its opposition to such releases"). Despite this principle, the bankruptcy court determined that Atlantic's failure to appeal the plan bars any complaints to this Court. On that issue, QuarterNorth insists that *Republic Supply Company v. Shoaf,* 815 F.2d 1046 (5th Cir. 1987), controls and forecloses certification here.

*Shoaf*, while instructive for its analysis of the specificity of the release, is not controlling, because it turns on the application of res judicata. That is, the Fifth Circuit ruled that a creditor was barred by res judicata from challenging whether the bankruptcy court exceeded its authority to release a guaranty. *Id.* at 1052-53. In subsequent opinions, the Fifth Circuit acknowledged that *Shoaf* addressed the effect of res judicata, not the legality of non-debtor releases, *In re Pacific Lumber Co.,* 584 F.3d at 252 n.27, and that *Shoaf*'s holding had a "limited nature" because it analyzed a plan that included specific language discharging the third-party guarantor and creditor, *In re Applewood Chair Co.,* 203 F.3d 914, 918-19 (5th Cir. 2000); *see also In re Vitro S.A.B. de CV*, 701 F.3d at 1068-69 (summarizing Fifth Circuit cases on non-debtor releases).

Moreover, the Fifth Circuit, albeit in a non-precedential opinion, has allowed a party who did not challenge the plan on direct appeal to challenge an interpretation of the plan's language post-confirmation. *Hernandez v. Larry Miller Roofing, Inc.*, 628 F. App'x 281, 286 n.4 (5th Cir. 2016) (noting that res

judicata bars challenges to a bankruptcy court's authority, but the court can still interpret "the provisions of the Plan as written in light of our precedent").

In *Hernandez*, an employee filed a claim asserting a violation of the Fair Labor Standards Act (FLSA) before his employer commenced Chapter 11 proceedings.  628 F. App'x at 283.  Hernandez filed a proof of claim in the bankruptcy proceeding and eventually elected a distribution and voted to confirm the plan.  *Id.*  After the plan was confirmed, Hernandez filed a motion to re-open his original FLSA lawsuit to pursue the president of the debtor for personal liability.[9]  *Id.* at 284.  The president, Larry Miller, moved for summary judgment, arguing that the Plan and Hernandez's acceptance of a distribution released him and "anyone else" from the FLSA claim.  *Id.*  The district court in *Hernandez* ruled in Miller's favor, finding that Hernandez was attempting to collaterally attack the judgment of the bankruptcy court.  *Id.*

On appeal, the Fifth Circuit proceeded with the analysis, "[a]ssuming, without deciding, that a bankruptcy reorganization plan can release claims

---

[9] The *Hernandez* court found it relevant that FLSA liability is joint and several amongst defendants. *Hernandez*, 628 F. App'x at 285.  That is, Hernandez could have sued Miller directly for the FLSA violation, and Miller's liability would have been determined independently from the debtor-employer's.  In that respect, *Hernandez* is potentially analogous to this case, insofar as LOWLA privileges could have been asserted against property held by the non-Fieldwood co-working interest owners, had Fieldwood's Plan not been interpreted to extinguish those privileges.

such as the FLSA claim against Miller in this case"[10] to "determine whether the Plan effectively released Hernandez's FLSA claim against Miller." *Id.* at 285. The court analyzed the plan's language to conclude that it did not pass muster under the "specificity test" applied in *In re Applewood*, 203 F.3d at 919, and *FOM P.R. S.E. v. Dr. Barnes Eyecenter Inc.*, 255 Fed. App'x 909, 912 (5th Cir. 2007) (per curiam). *Id.* at 286-88. That is, the language of the plan did not contain a "specific discharge or release" such that the claims against non-debtors could be interpreted as being released by the plan. *Id.* at 286.

Atlantic's procedural steps have been analogous—and, if anything, Atlantic did more to preserve its right to challenge the interpretation of the Plan by voting against confirmation, refusing to opt out of two non-debtor release agreements, and electing a smaller distribution as a result. *See* Dkt. 2 at 10-11, 18 (Atlantic's undisputed summary of steps taken to preserve its LOWLA privileges). Thus, while Atlantic did not appeal the Plan's confirmation, it may still be able to challenge whether the Plan contains an adequately specific discharge or release of Atlantic's LOWLA privileges attached to non-debtor property.

---

[10] The Court here, too, could determine that the Plan's language was sufficiently specific (or not) without addressing whether bankruptcy proceedings may extinguish *in rem* claims against non-debtor property. But because Atlantic's motion raised both the issue of authority and interpretation, both are worthy of certification for direct review.

### C.     The incorporation of the Disclosure Statement

The Fifth Circuit's general disapproval of third-party releases and the application of "specificity test" used to interpret releases in a plan are well-established.  These issues therefore do not constitute unresolved issues of law.  Instead, the Court finds an embedded and more nuanced issue on which there is no controlling precedent: which documents courts may consider when assessing the specificity of a third-party release.

Here, there is no dispute that the Disclosure Statement contained a highly specific description of its intent to discharge Atlantic's claims:

> **O. Adversary Complaint Against Atlantic Maritime Services, LLC.**
>
> ... On April 14, 2021, the Debtors filed an amended adversary complaint in the Atlantic Proceeding ..., seeking an extension of the automatic stay to the [co-working interest owners] for the remainder of the Chapter 11 cases and, among other relief, determinations from the Bankruptcy Court that ... (iv) upon the satisfaction, settlement, and discharge of Atlantic's claims pursuant to the Plan, any Louisiana privileges held by Atlantic will be "extinguished" under LOWLA section 4864, including any Louisiana privileges that extend to the [co-working interest owners'] working interests in such leases.

Bankr. Dkt. 1285 at 46-47.  The bankruptcy court apparently viewed this language as dispositive, reversing its trial ruling once the language was

brought to its attention.  That was true despite the Plan's facially generic language and omission of any specific mention of Atlantic's LOWLA rights.[11]

The question then is whether courts may look to the language in the Disclosure Statement to supplement the Plan when applying the third-party release "specificity test."  The parties are silent on this issue.  And this Court has not identified any precedent that permits the consideration of the Disclosure Statement in this context.

The Fifth Circuit has deemed it appropriate to read the Plan alongside the Disclosure Statement in certain instances, but without endorsing a broad principle that permits consideration of both documents in every context.  For example, the court has held that "courts may consult the disclosure statement in addition to the plan to determine whether a post-confirmation debtor has standing." *In re Tex. Wyoming Drilling, Inc.*, 647 F.3d 547, 551 (5th Cir. 2011). In conducting that analysis, the Fifth Circuit observed that "no court of appeals" had yet addressed the issue and weighed the role of the disclosure statement in "similar contexts." *Id.*  It also noted that "courts routinely consult the disclosure statement in deciding whether res judicata and judicial estoppel

---

[11] QuarterNorth does not dispute the fact that the Plan does not describe Atlantic's LOWLA privileges, focusing instead on the "contractual language," *i.e.*, the "satisfaction" and "settlement" language, found in Sections 4.7, 6.8, and 10.3 of the Plan.  *See* Dkt. 11 at 7-12.

apply." *Id.* at 550-51 (referencing *In re Coastal Plains, Inc.,* 179 F.3d 197, 208 (5th Cir. 1999), and referencing on out-of-circuit examples).[12]

The Fifth Circuit's measured language in *Texas Wyoming Drilling* is striking, especially when contrasted with the underlying bankruptcy court's reasoning that "a plan and disclosure statement"—*categorically*—"may be considered together to determine the intent of the parties." *See In re Tex. Wyo. Drilling, Inc.*, 422 B.R. 612, 629-30 (N.D. Tex. 2010) (invoking general contract law principles that permit agreements governing the same transaction to be construed together). Notably, apart from invoking contract-law principles, the bankruptcy court relied on a non-controlling district court decision which, in turn, cited non-controlling law. *See id.* (citing *Floyd v. CIBC World Markets, Inc.*, 426 B.R. 622, 637-38 (S.D. Tex. 2009), which cited a Ninth Circuit Bankruptcy Appellate Panel and other out-of-circuit district court and bankruptcy court decisions).

---

[12] Without pronouncing a broader rule, other circuits have considered the adequacy of notice in a disclosure statement when assessing the enforceability of a third-party release. *See In re Lower Bucks Hosp.*, 571 F. App'x 139, 142-43 (3d Cir. 2014) (finding that a third-party release is akin to an injunction barring suit and therefore a single-page mention of the release in the disclosure statement and a vague description in the plan were insufficient to provide the third-parties notice); *Matter of Specialty Equip. Cos.*, 3 F.3d 1043, 1049 (7th Cir. 1993) (weighing the fact that a "vast majority of interest holders in the same class as [the objecting creditors], privy to the same information in the disclosure statement, voted to accept this Plan[,]" so the plan and incorporated third-party releases should not be disturbed under the doctrine of equitable mootness). Although instructive, these decisions do not bind this Court.

As already noted though, this dispute does not hinge upon the application of res judicata. *See supra* Part III.B. Thus, it remains unclear whether courts may read the Plan and the Disclosure Statement together when applying the "specificity test" for a third-party release. If the answer is yes, there appears to be little doubt that Fieldwood's Disclosure Statement put Atlantic on notice that its LOWLA privileges would be extinguished; in such an instance, Atlantic would be foreclosed from collaterally attacking the Plan or arguing for an interpretation of the Plan that overrides the Disclosure Statement's express language. But if the answer is no, then the bankruptcy court's conclusion that the terms "satisfaction" and "settlement" eliminate Atlantic's LOWLA privileges against non-parties becomes more tenuous.

Because the relevance of a disclosure statement in the "specificity test" has broader implications beyond this dispute, the Court finds that both conditions of 28 U.S.C. § 158(d)(2)(A)(i) are satisfied. Certification of the bankruptcy court's judgment is appropriate to resolve this independent issue.

## <u>Recommendation</u>

For the foregoing reasons, it is **RECOMMENDED** that the Court **GRANT** Atlantic's Motion for Certification of Direct Appeal (Dkt. 2), and enter an order **CERTIFYING** for direct appeal, under 28 U.S.C. § 158(d)(2)(A), the bankruptcy court's final judgment, Adv. Proc. No. 20-3476, Dkt. 158 (Bankr. S.D. Tex. Mar. 10, 2022); Case No. 20-33948, Dkt. 2408 (Bankr. S.D. Tex. Mar.

10, 2022), including the Memorandum Opinion granting reconsideration that merged into that judgment, Adv. Proc. No. 20-3476, Dkt. 153 (Bankr. S.D. Tex. Feb. 23, 2022); Case No. 20-33948, Dkt. 2397 (Bankr. S.D. Tex. Feb. 23, 2022).

**The parties have fourteen days from service of this Report and Recommendation to file written objections.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).   Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error.  *Ortiz v. City of San Antonio Fire Dep't*, 806 F.3d 822, 825 (5th Cir. 2015).**

Signed on February 16, 2023, at Houston, Texas.

_____
Yvonne Y. Ho
United States Magistrate Judge